### APPEAL OF A. FRIEDERICH & SONS CO.

Docket No. 3412.     Submitted July 22, 1925.     Decided November 11, 1925.

1. The taxpayer herein *held* affiliated with the Genesee Construction Co. and Friederich Bros. Realty Co. in the year 1918.

2. Pre-war income as determined by the Commissioner approved.

3. Alleged value of good will acquired by the taxpayer from its predecessor disallowed for invested capital purposes.

*J. Bond Smith, Esq.,* and *K. Werner Heye, C. P. A.,* for the taxpayer.

*Arthur J. Seaton, Esq.,* for the Commissioner.

Before MARQUETTE and MORRIS.

Three questions are raised: (1) Whether the taxpayer was affiliated with the Friederich Bros. Realty Co.? (2) Whether the Commissioner correctly computed the pre-war average net income? (3) Whether there was a good will value of a predecessor company paid in for stock to be included in invested capital?

The Commissioner accepted a consolidated return for the taxpayer and the Genesee Construction Co. but denied the inclusion of the Friederich Bros. Realty Co. within the consolidated group.

### FINDINGS OF FACT.

The taxpayer, A. Friederich & Sons Co., is a New York corporation, organized in July, 1912, to succeed to the business previously conducted by a New York corporation of the same name which had been organized in 1900. The business transacted was that of a general contractor.

The Genesee Construction Co. is a New York corporation, organized in 1903 for the purpose of employing the labor and performing the labor on the contracts of the taxpayer's predecessor, the service being done on a basis of cost plus a nominal percentage of profit. The company was formed in order to have the liability to employees that of a different company than A. Friederich & Sons Co. and by reason of labor troubles.

The Friederich Bros. Realty Co. is a corporation organized in 1907 for the purpose of holding the title to real estate (which was rented to the other companies), sand pits (from which gravel was sold to the other companies for use on construction contracts), and equipment used by the other companies on such contracts. The property owned by this company was acquired at organization from the former corporation, A. Friederich & Sons Co., and prior to such acquisition had been used by the latter in its construction business.

All three companies occupied the same offices but maintained separate books of account. Each company engaged in business and financial transactions with the others during 1918.

During the year 1918 the voting stock of the three companies was owned as follows:

| | A. Friederich & Sons Co. | Genesee Construction Co. | Friederich Bros. Realty Co. |
|---|---|---|---|
| J. J. L. Friederich | 240 | 8 | 300 |
| Wm. M. Friederich | 240 | 9 | 300 |
| Adam G. Friederich | 240 | 9 | 300 |
| Lewis Friederich | 240 | 9 | 300 |
| Max M. Friederich | 240 | 9 | 300 |
| H. J. Stevens | 50 | 1 | None. |
| Frank J. Lill | 50 | 1 | None. |
| Roy Cady | 50 | 1 | None. |
| Curtis M. Dooley | 50 | 1 | None. |
| Frank C. Knope | 50 | 1 | None. |
| Chas. T. Klem | 50 | 1 | None. |

The five Friederichs were brothers. The six other stockholders in the taxpayer and in the Genesee Construction Co. were employees. The officers and directors of the several companies in 1918 were:

| | A. Friederich & Sons Co. | Genesee Construction Co. | Friederich Bros. Realty Co. |
|---|---|---|---|
| Directors | J. J. L. Friederich, Wm. M. Friederich, Adam G. Friederich, Max M. Friederich, Henry J. Stevens, Frank J. Lill, Roy Cady. | Frank C. Knope, Lewis Friederich, Curtis M. Dooley, Charles T. Klem. | Not in evidence. |
| President | J. J. L. Friederich | Frank C. Knope | Do. |
| Vice President | Wm. M. Friederich | Curtis M. Dooley | Do. |
| Treasurer | Max M. Friederich | Lewis Friederich | Do. |
| Secretary | Adam G. Friederich | Charles T. Klem | Charles T. Klem. |

The employees' stock in the taxpayer and in the Genesee Construction Co. was sold to them by the Friederich brothers during a period of labor troubles as an inducement to gain their loyalty and activity in influencing other employees to work for the general harmony of the two companies. The stockholder employees gave their individual notes to the Friederich brothers for the stock, secured by the stock as collateral, payments being made on the notes out of dividends as received. Interest was paid by the employees. In but one instance has a note ever been fully paid up and a stock certificate issued to the employee. All stock was sold by the Friederich brothers to the employee under the agreement that the employee would never sell the stock to anyone but one of the Friederich brothers and that payment would be made therefor in an amount equal to the total amount paid by the employee in reduction of his note obligation. As employee-stockholders left the employ of the companies, such was actually done. In no case did the employee-stockholders vote their stock contrary to the interests of the Friederich brothers.

The Commissioner permitted a consolidated return to be filed for the taxpayer and the Genesee Construction Co., and computed the war and excess profits tax liability upon that basis.

Substantially all the stock of A. Friederich & Sons Co., the Genesee Construction Co., and Friederich Bros. Realty Co. was owned or controlled by the same interests.

The certificate of incorporation of the taxpayer, dated July 8, 1912, stated the purposes for which it was formed to be:

(1) To acquire the business, properties, assets and good-will of the A. Friederich & Sons Company, a corporation organized on or about the 19th day of January, 1900; to assume the liabilities of such corporation and to conduct and carry on the business heretofore carried on by such old corporation;

(2) The construction, erection, building, alteration, repairing, improvement, removal and destruction of buildings and structures of every kind and description, of streets, roads and highways, canals, railroads, sewers, waterworks and tunnels, and to carry on the business of general contractors and to do a general contracting business.

The authorized capital was $300,000, divided into common stock $150,000 and preferred stock $150,000. The amount of capital with which the corporation began business was $100,000.

By resolution of the taxpayer, at a meeting held July 20, 1912, it was resolved that the entire authorized capital stock of the corporation be issued for all of the real and personal property of the old corporation, and its entire business and good will, rights, and franchises, on condition that debts and liabilities be assumed.

The earnings of the predecessor corporation and the taxpayer were:

| | |
|---|---:|
| 1913 | $8, 501. 89 |
| 1912 | 25, 177. 59 |
| 1911 (loss) | 59, 248. 59 |

The Commissioner determined a deficiency for 1918 of $6,292.96 and the taxpayer duly appealed.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 7 days' notice, under Rule 50.

### OPINION.

MARQUETTE: On the question of the affiliation of the three companies, we have a situation where five individuals owned 80 per cent of the stock in one company, 88 per cent in the second, and 100 per cent in the third. There were intercompany transactions between all three companies and the stock of the minority interests was held under contracts with the majority interests, and was in fact controlled by the majority. Upon the facts submitted the three companies constituted an affiliated group, and the tax liability for the year 1918 should be computed on the basis of a consolidated return.

No evidence was adduced which would justify our finding error by the Commissioner in his determination of the excess profits and war profits credits. The taxpayer contended that the earnings of the taxpayer for 1912 and 1913 should be used, with no reference to the earnings of the predecessor business. The taxpayer was able to submit computations of the earnings of the predecessor for the years 1906 to 1910, inclusive, but omitted the figures for 1911 until the same were brought out on cross examination and showed a loss for that year of almost $60,000. The proof of the invested capital for the pre-war period was far from satisfactory and the Commissioner's determination thereof will not be disturbed.

The taxpayer claimed that $300,000 of stock was issued in payment for the tangible and intangible assets of the predecessor company. The minute book of the taxpayer showed a resolution *authorizing* the action, but there was no evidence that same was accomplished. To the contrary, an exhibit, in the form of a book showing annual statements of the assets and liabilities of the taxpayer, set forth the capital stock as $150,000 common paid in. There were pencil entries in some of the years showing an attempt to add $150,000 preferred stock on the liability side, which was offset by $150,000 of good will as an asset, with pencil changes in the totals. Such was true of the balance sheets of January 1, 1914, and January 1, 1915, but not for any other years. The record carried through to and including January 1, 1919.

But even if the entire $300,000 of stock was, in fact, issued for the assets, there was no competent evidence to prove the value of good will or any other intangible. The Commissioner's exclusion of good will from invested capital was proper.