*1321 OPINION.
Marquette:
On the question of the affiliation of the three com-
panies, we have a situation where five individuals owned 80 per cent of the stock in one company, 88 per cent in the second, and 100 per cent in the third. There were intercompany transactions between all three companies and the stock of the minority interests wag held under contracts with the majority interests, and was in fact controlled by the majority. Upon the facts submitted the three companies constituted an affiliated group, and the tax liability for the year 1918 should be computed on the basis of a consolidated return.
*1322 No evidence was adduced which would justify our finding error by the Commissioner in his determination of the excess profits and war profits credits. The taxpayer contended that the earnings of the taxpayer for 1912 and 1913 should be used, with no reference to the earnings of the predecessor business. The taxpayer was able to submit computations of the earnings of the predecessor for the years 1906 to 1910, inclusive, but omitted the figures for 1911 until the same were brought out on cross examination and showed a loss for that year of almost $60,000. The proof of the invested capital for the pre-war period was far from satisfactory and the Commissioner’s determination thereof will not be disturbed.
The taxpayer claimed that $300,000 of stock was issued in payment for the tangible and intangible assets of the predecessor company. The minute book of the taxpayer showed a resolution authorizing the action, but there was no evidence that same was accomplished. To the contrary, an exhibit, in the form of a book showing annual statements of the assets and liabilities of the taxpayer, set forth the capital stock as $150,000 common paid in. There were pencil entries in some of the years showing an attempt to add $150,000 preferred stock on the liability side, which was offset by $150,000 of good will as an asset, with pencil changes in the totals. Such was true of the balance sheets of January 1, 1914, and January 1,1915, but not for any other years. The record carried through to and including January 1, 1919.
But even if the entire $300,000 of stock was, in fact, issued for the assets, there was no competent evidence to prove the value of good will or any other intangible. The Commissioner’s exclusion of good will from invested capital was proper.